**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **JANE DOE** ) | |
| **By her parents and next friends,** ) | |
| **JANE ROE AND JOHN DOE** ) | |
| ) | |
| **v.** ) | **Case No.:** |
| ) | |
| **LOUDOUN COUNTY** ) | |
| **SCHOOL BOARD,** ) | |
| ) | |
| **Defendant.** | |

**COMPLAINT**

NOW COMES the Plaintiff, Jane Doe, by her parents and next friends, Jane Roe and John Doe, through counsel, and states the following as and for her Complaint against the Loudoun County School Board:

1. This is a civil rights case brought by Jane Doe, a graduate of Loudoun County Public Schools hereinafter ("LCPS"), who, at age 15, was sexually assaulted by a younger male LCPS student in a female bathroom at Stone Bridge High School (hereinafter "the incident").

2. Despite being fully aware of the aforementioned incident school officials failed to complete a thorough, timely investigation of the incident and even endeavored to cover up said incident.

3. LCPS also failed to offer or provide Jane Doe with the support she needed to feel safe at school, where she continued to attend class.

4. As a result of LCPS's failure to take meaningful and appropriate action to address her sexual assault and protect her from further threats and assault, Jane Doe struggled academically, emotionally, and physically for the remainder of the school year. She

1

continues to struggle significantly with the aftermath of the sexual assault and the school's failure to take appropriate action to help her and protect her while she still was attending Loudoun County Public Schools.

5.   LCPS's failure to respond promptly and adequately to reports that Jane Doe was sexually assaulted by another LCPS student constitutes sex discrimination, in violation of Title IX of the Education Amendments of 1972 ("Title IX").

6.   After the sexual assault, Jane Doe was physically assaulted, threatened, and bullied by peers in a targeted form of harassment that was so severe, pervasive, and objectively offensive that it deprived her of access to a safe educational environment. LCPS took no action in support and/or protect her at this time or at any time prior to or after the sexual assault despite of having full knowledge of same.

7.   With 92,000 students, LCPS's deliberate indifference to sexual assault within the student body is subjecting an unconscionable number of students, including Jane Doe, to a hostile educational environment based on sex.

8.   LCPS is in *loco parentis* of Jane Doe and all other students while they are on school property.[1]

9.   As the entity that manages and operates LCPS, Defendant Loudoun County School Board is responsible for LCPS's Title IX violations.

**JURISDICTION AND VENUE**

---

[1] "When parents place minor children in private schools for their education, the teachers and administrators of those schools stand in loco parentis over the children entrusted to them. In fact, the tutor or schoolmaster is the very prototype of that status. As Blackstone describes it, a parent 'may . . . delegate part of his parental authority, during his life, to the tutor or schoolmaster of his child; who is then in loco parentis, and has such a portion of the power of the parent committed to his charge, viz. that of restraint and correction, as may be necessary to answer the purposes for which he is employed.'" *Vernonia Sch. Dist. 47J v. Acton* (94-590), 515 U.S. 646 (1995). 1 W. Blackstone, Commentaries on the Laws of England 441 (1769).

10. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the laws of the United States. Specifically, the Plaintiff asserts a claim under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et. seq.*

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant Loudoun County School Board resides within this Court's judicial district and a substantial and the consequential part of the events or omissions giving rise to the claims occurred within this district.

## PARTIES

12. Plaintiff Jane Doe (hereinafter "Jane Doe") is now a 17-year-old female who resides with her parents in Loudoun County, Virginia. Jane Doe is suing the Defendant through her next friends and parents, Jane Roe and John Doe.

13. Defendant Loudoun County School Board (hereinafter "LCSB") is a public-school board that is responsible for overseeing the operation and management of the public education system of Loudoun County Public Schools (hereinafter "LCPS").

14. Defendant LCSB is the body corporate for LCPS and is vested with all powers and charged with all duties, obligations, and responsibilities imposed upon LCPS.

15. Defendant LCSB is the public body "that governs" [the] school division" of LCPS within the meaning of Va. Code Ann. § 22.1-1, VA. Const., Art. VIII § 7 ("The supervision of schools in each school division shall be vested in a school board"), Va. Code An § 22.1-28 ("supervision of schools in each school division shall be vested in a school board"), and Va. Code Ann. § 22.1-71 (stating that the "school board" is the "body corporate" with the power to "sue" and "be sued").

16. As the corporate body for LCPS, Defendant LCSB is a recipient of federal financial assistance within the meaning of 20 U.S.C. § 1681(a).

**FACTS RELEVANT TO CLAIM**

17. Policy 1040, the LCPS policy that was put in place before the controversial transgender "bathroom" policy 8040, prevented staff from intervening when a student visited a restroom different from his/her biological sex. The policy reads, in part: "Demeaning or otherwise harmful actions are prohibited, particularly if directed at personal characteristics, including, but not limited to socioeconomic level, sexual orientation, perceived sexual orientation, gender identity, or gender expression." (Exhibit 1 policy).

18. On May 28, 2021, 15-year-old Jane Doe was sexually assaulted in a women's restroom at Stone Bridge High School by a skirt-wearing male.

19. Jane Doe reported the sexual assault to the school.

20. Jane Roe received a call from a staff member at the school informing her that Jane Doe had been "beaten up" by a male in a female restroom—but failed to inform her of the sexual assault.

21. When Jane Roe arrived at the school, she found Jane Doe with her school counselor, Cynthia McCarthy.

22. Jane Roe tried to communicate with Jane Doe but was told by McCarthy: "Shh…We can't talk about it."

23. It was only after Jane Roe's persistence in talking with her daughter that she became aware that Jane Doe had been sexually assaulted through short verbal exchange with one-worded questions such as "Physical?" "Sexual?" "Penetration?"

24. McCarthy then bizarrely asked Jane Roe and Jane Doe about their summer plans,

4

refusing to address the assault or take any protective measures to ensure Jane Doe's safety.

25. Once John Doe arrived at the school, Jane Roe asked McCarthy to go and support Mr. Doe. McCarthy left the office abandoned the family and never returned.

26. John Doe expressed his frustration at the school's failure to take the incident seriously— the school insisted that it would handle the investigation in-house without the assistance of local law enforcement and refused to report the incident to the proper law enforcement. John Doe became so upset about the school's lack of involvement of law enforcement in the matter at that time, that he allegedly "caused an incident at the front office" that eventually required the school to call law enforcement to the school for his behavior, and not for investigation of the sexual assault that had occurred to his daughter earlier in the day.

27. School Resource Officer Henry did not question Jane Doe about the incident, except for the one time he asked her whether the sexual assault really happened.

28. At the insistent of the members of the Loudoun County Sheriff's Office Jane Doe and her parents were then escorted to the Loudoun County Sheriff's Office to meet with the Special Victims Unit (SVU), then to Cornwall Inova Hospital, where they entered the Loudoun Child Advisory Center with SVU. Jane Doe was interviewed there and handed over her clothes and cell phone.

29. Later that night, an SVU officer came to the Doe house and swabbed Jane Doe's face and teeth.

30. A full rape kit exam was performed the next morning on May 29th.

31. Stone Bridge High School Principal Tim Flynn sent out a statement to parents the same

day, but bizarrely only referenced John Doe's aforementioned actions that day. There was no mention of the assault: "There was an incident in the main office area today that required the Loudoun County Sheriff's Office to dispatch deputies to Stone Bridge. The incident was confined to the main office and the entrance area to the school. **There was no threat to the safety of the student body**... Students might have noticed Sheriff's Office personnel on campus and I wanted to let you know that something out of the ordinary happened at school today." (Exhibit 2). (Emphasis added).

32. On June 1st, Jane Doe returned to school after law enforcement assured John Doe and Jane Roe that a safety plan was in place for Jane Doe. However, no safety plan was put in place to protect Jane Doe from further harm. Jane Doe, Jane Roe, and John Doe were all told to leave the school premises.

33. On June 2nd, Jane Doe was admitted to the hospital for two weeks for physical, mental, and emotional trauma she suffered because of the sexual assault.

34. John Doe was banned from Stone Bridge High school on June 2nd and was subsequently arrested at a meeting of the Loudoun County School Board that he attended for disorderly conduct and obstruction of justice on June 22nd.

35. At that school board meeting, the Superintendent of LCPS *denied* that a sexual assault had ever taken place in a bathroom in any of their schools, as the school board was discussing enlarging their 1040 transgender policies to reflect guidance set forth by the Virginia Department of Education (VDOE) (proposed as "8040 guidelines"). These proposed guidelines included but were not limited to allowing those students who identified as a gender other than their biological gender to have access to the bathroom of their preferred gender identification. The revelation that a rape of a female student in

6

the female bathroom at a LCPS school by a "gender fluid" male wearing a skirt during Pride Month would have presented awkward unwanted facts that would have harmed the school board's efforts to adopt such a policy, one that was overwhelmingly favored by the board members.

36. Specifically, at the school board meeting on June 22, 2021, LCSB Superintendent Scott Ziegler lied that he was unaware of the sexual assault, despite the fact that Loudoun County Sherriff's office conducted a two-month investigation into the assault: "To my knowledge, we don't have any record of assaults occurring in our restrooms." Ziegler lied and added: "I think it's important to keep our perspective on this, we've heard it several times tonight from our public speakers but the predator transgender student or person simply does not exist." (Exhibit 3). (Emphasis added).

37. This political motive to avoid acknowledgement of what happened to Jane Doe led to LCSB's failure to take remedial, supportive measures to provide her with a safe school environment after the sexual assault.

38. In fact, Superintendent Ziegler *had* in actuality emailed each member of the Loudoun County School Board on May 28th notifying them of the sexual attack. (Exhibit 4).

39. Initially, LCSB said it was prevented from handling the sexual assault because of its need to comply with law enforcement, and that it could not discipline the assailant until the law enforcement investigation was concluded. This assertion was incorrect or simply plain false.

40. On October 25, 2021, the assailant was found guilty of sexually assaulting Jane Doe.

41. In November of 2021, Ziegler wrote the Loudoun County Sherriff's Office and stated that the school board "cannot confirm" that it had received notification that the

7

perpetrator of the sexual assault had been criminally charged. (Exhibit 5).

42. Damningly, a response letter written on November 10, 2021 (Exhibit 6), Sheriff Michael Chapman contradicted Ziegler's claim. In his letter, Chapman referenced a letter from July 9, 2021, where the Loudoun Juvenile Detention Center informed the school that the perpetrator had been taken into custody.

43. In the November 10 letter (Exhibit 6), Chapman said that Ziegler was "unmistakably aware of the offense" and that he knew of the assault on the same day it occurred in May, since he "personally reported" the assault to the school board that day: "Nothing in your letter addresses the following facts," Chapman wrote to Ziegler. "That you knew of the alleged sexual offense the day it occurred. That despite a public statement at a School Board meeting on June 22, 2021 denying any knowledge of sexual assaults in any LCPS bathrooms, you sent an email on May 28, 2021 to members of the school board advising them of the incident — thus invalidating your public statement."

44. Chapman blamed LCSB for the second assault, writing that the district chose to allow "this individual into (another) high school population," where he assaulted another young woman, despite the knowing of the "serious nature of the [first] assault:" "The consequences of that decision resulted in a second student being victimized by the same student."

45. Chapman also expressed concerns about Ziegler's ability to oversee an official investigation: "I noticed that you commissioned an 'independent' review, which I assume will be paid for by the LCPS using Loudoun County taxpayer dollars. You announced this a day after incoming Attorney General Jason Miyares stated publicly that he intends to investigate this incident. While I believe an independent review would be

helpful, I have concerns of the legitimacy of such a review conducted at your direction. As the Attorney General is accountable to the citizens of Virginia, I feel an Attorney General review is the most objective way to move forward on this issue."

46. Meanwhile, Jane Doe has been incessantly reminded of her assault, bullied by some of her peers, and forced to create a new normal where she lives in fear of retaliation from classmates from where she reported the sexual assault:

   a.  Jane Doe received a written threat of physical violence from a classmate on August 26th. Jane Roe and Jane Doe reported this threat to the school. Jane Roe then reported this incident to the Loudoun County Sherriff's Office after LCPS failed to respond to the incident in a timely manner. This was a sex-based threat and was made in retaliation for Jane Doe's report of her sexual assault and other opposition to sex-based mistreatment at the school.

   b.  Jane Doe was physically assaulted by a classmate on September 8th. This was a sex-based assault and was committed in retaliation for her report of the initial sexual assault and other opposition to sex-based mistreatment. This incident was recorded by the same student who threatened Jane Doe with physical violence on August 26th. Jane Doe reported this incident to LCPS, and despite the seriousness of the threat, the perpetrator was suspended for less than a week.

   c.  Jane Doe was again threatened by several classmates on October 14th. These were sex-based threats and were made in retaliation for her report of the initial sexual assault and other opposition to sex-based mistreatment. Jane Doe reported this incident to the school.

d. Instead of adequately disciplining those who bullied and threatened Jane Doe, LCPS forced Jane Doe to make changes in her own class schedule. Jane Doe's class schedule was changed, despite objections from her parents.

e. Jane Doe received threatening messages in October 2022 on social media to include, "the world without people like you who are just board and cause problems for they're entertainment purposes need to be lynched," by another student. Judge Pamela Brooks ruled in favor of Jane Doe in January 2023, granting a two year protective order against the student who threatened her with death.

47. These unconscionable acts caused Jane Doe even more emotional and psychological trauma, and LCPS failed to protect her from and was deliberately indifferent to the sex-based and retaliatory threats and the physical assault that exacerbated the trauma of the original horrific sexual assault.[2]

48. The actions of LCPS following the sexual assault were deliberately indifferent and failed to prevent further assault, and the school was certainly on notice after the August 26th incident that Jane Doe faced a substantial risk of further threats or physical assault.

49. Such deliberate indifference made Jane Doe vulnerable to further targeted harassment at school.

50. Jane Doe and her parents were advised by LCPS administrators not to discuss the sexual assault of their daughter with anyone and were told "we can't talk about it."

---

[2] As stated above, Jane Doe was a transfer student to Stone Bridge High School. On May 20, 2021, John Doe and Jane Roe had a phone call with school to discuss Jane Doe's wellbeing after she experienced several health issues during the school year. School administrators assured the parents that Jane Doe's wellbeing was a priority for the school, and they would personally work to make sure she was safe on campus. Days later, she was raped.

51. Loudoun County Sherriff's office confirmed to Fox News by a written statement that an investigation took place: "We can confirm a May 28, 2021 case that involved a thorough 2-month-long investigation that was conducted to determine the facts of the case prior to arrest," the statement read. "This case is still pending court proceedings. The Loudoun County Sheriff's Office is not able to provide any documents that pertain to a pending case." (Exhibit 7).

52. Subsequently, in a statement made on October 15, 2021, Ziegler admitted that the school failed to protect Jane Doe, saying: "To the families and students involved: My heart aches for you, and I am sorry that we failed to provide the safe, welcoming and affirming environment that we aspire to provide." (Exhibit 8).

53. Ziegler also admitted that LCPS "inadvertently omitted some information" when reporting disciplinary incidents to the Virginia Department of Education as required by law and added that "[i]n the future, we will report events in real-time in our system." (Exhibit 9).

54. Ziegler then bizarrely blamed Title IX for its own failure to adhere to the law, claiming that it (Title IX) was insufficient to protect victims of sexual assault, and that he would lobby for revisions to the law in the future.

55. Ziegler also promised to discipline alleged assailants quicker in an effort to protect future victims, despite his initial claim that the existing law prohibited LCPS from doing so, "to the extent we are legally permitted to do so, we will begin disciplinary action at the time of the incident, rather than suspending that action until the end of the Title IX or criminal investigation." (Exhibit 10).

56.    LCPS did not even begin a Title IX investigation of the rape of Jane Doe until

October 19, 2021, nearly <u>five</u> months after the incident occurred.  At no time after the

incident did LCPS conduct a threat assessment of the assailant, nor provide any support

services to Jane Doe as required by Title IX.

57. In fact, nine days later, LCPS hired outside counsel, Blankingship and Keith to conduct

an internal investigation of the incidents, and "review LCPS's responses to the incidents

and to provide any recommendations for improvement." (Exhibit 11, "Report Regarding

Investigation Into Misconduct at Stone Bridge High School and Broad Run High

School," dated December 31, 2021).

58. Loudoun County Commonwealth's Attorney Buta Biberaj said the assailant was

released from juvenile detention as the case proceeded, "Based on the information that

we had and the fact that we were waiting for forensic evidence to come back, the statute

required his release," she said. "He appeared to be a good candidate to be put on

electronic monitoring based on the information that was provided." (Exhibit 12).

59. Indeed, Biberaj even suggested that there were two sides to the assault: "[W]e know,

what sometimes is reported initially is not then what the end result of all the facts are."

This startling quote appears to be an intentional attempt to dimmish the credibility of

and tarnish the character of Jane Doe. (Exhibit 12).[3]

60. In fact, the Loudoun County Public School system was previously aware that Jane Doe's

attacker had inappropriate sexual contact with another student a few years earlier on

school grounds. Despite this knowledge, the LCPS system failed to protect Jane Doe

(and others) from the harm she subsequently suffered.

---

[3] The December 5, 2022, Grand Jury Report revealed that Biberaj's office never contacted LCPS to ensure that the court's requirement prohibiting the predator from returning to SBHS had been followed.  (Grand Jury Report Pg. 11).

61. The now convicted sexual predator is currently being held in a juvenile mental health facility after being convicted of the charges of sexual battery and forcible sodomy on October 25, 2021, in the Juvenile and Domestic Relations Court of Loudoun County.

62. Subsequently to the predator's conviction, a grand jury impaneled by the County released a report (hereinafter "the Report") detailing LCPS' misdeeds in responding to the Plaintiff's sexual assault. (December 5, 2022, Grand Jury Report Attached As Exhibit 13).

63. The most egregious findings of the scathing Report[4] include, but are not limited to the following:

  a. The assailant's sexually deviant behavior was noticed by educators and family members well before the Plaintiff's assault, but no one at LCPS intervened until it was too late. (Report Pgs. 2, 5, 10, 12).[5]

  b. A special education teaching assistant claimed after the assault that she saw two pairs of feet under the bathroom stall on May 28, 2021 but did nothing about it: "The assailant later acknowledged that 'they usually don't do anything'

---

[4] "According to the LCPS website, the stated mission of the safety and security division is 'to provide a safe and secure educational environment for all students, staff, and external stakeholders. This is accomplished through the execution of a comprehensive and integrated security plan that constantly evolves to address the ever-changing threat landscape.' Yet on the afternoon of May 28, 2021, the director of safety and security was mainly concerned with the fact that a disruptive parent was in the front office of SBHS–not that a student had been sexually assaulted or that the assailant was at large in the school. His testimony further revealed that **he never even asked what caused the parent's disruptive behavior, nor did he make any inquiries about the sexual assault victim or the alleged perpetrator**. The director of safety and security also was never informed about, and played no role, the transfer of the SBHS assailant to BRHS, notwithstanding the fact that the student was awaiting trial on two counts of forcible sodomy, was ordered to wear an ankle monitor, had been assigned a pre-trial release officer and had a twelve-page disciplinary."
[5] On May 12, 2021, a little over two weeks before the assailant assaulted the Plaintiff, an educator wrote a supervisor to express concern about his behavior: "…**I wouldn't want to be held accountable if someone should get hurt.**" (Report Pg. 2). Later, assailant stayed with his grandmother in the weeks after he assaulted the Plaintiff. She referred to him as a "**sociopath**" who "**does not care about consequences**." (Report Pg. 10). His mother blamed LCPS for the escalation in his alarming behavior: "**Only after his actions escalated to concerning levels did they choose to listen and incorporate my input**." (Report Pg. 10). Emphasis added.

THE STANLEY LAW GROUP

regarding two pairs of feet in a stall." Most damningly, this inaction allowed the
brutal assault to continue: "After the teaching assistant left, the assailant again
forced penetration against the female student, this time orally."

c.  The assailant was at large in the school building for *over three hours* after his
assault on the Plaintiff and was not discovered until he left school for the day's
dismissal: "A teacher who knew the assailant was pulled in to try to locate the
assailant via camera footage." (Report Pg. 6).

d.  Instead of placing the school on lockdown to locate him, LCPS was more
concerned with the Plaintiff's father's visible (and understandable) distress as a
result of the sexual assault rather than the *actual* assault.[6]  Handwritten notes
from now-Deputy Superintendent Ashley Ellis briefly detail the sexual assault.
Ellis wrote that the Plaintiff's father was "acting inappropriately," "need[ed] to
be gone by 3:30," and that the Plaintiff "arranged to have sex in bathroom." At
the end of the note, almost casually, Ellis wrote that the assailant "took off" and
that "mom has been informed he's missing." Inexplicably, this is the note's only
direct reference of the assailant. (Report Attachment 4).

e.  The assailant was allowed to return to the same school as the Plaintiff on the next
school day after the assault. From there, he was "back in school on his computer
deleting conversations–and potential evidence–from Discord." (Report Pg. 7).

f.  LCPS deliberately withheld information from parents about the Plaintiff's assault

---

[6] A May 28, 2021, email from SBHS Principal Timothy J. Flynn only briefly mentioned the "alleged
sexual assault," detailing instead that "the Father showed up and created a second incident...[T]his was
quite a show that **scared and intimidated students and staff**...He probably should have been arrested..."
(Report Attachment 5). Emphasis added. This attitude is also reflected in a conversation between LCPS
officials in Attachment 19 of the Report).

displaying a "consistent lack of transparency on the part of LCPS." (Report Pg. 21).

**g.** LCPS' falsely claimed that it could not complete a Title IX investigation until the assailant was charged with crime(s) by law enforcement. (Report Pg. 17).

**h.** In what appears to be an enormous conflict with the information now publicly available, Mark Smith, the LCPS Title IX Coordinator at the time of the Plaintiff's assault, *also* served as the school system's Chief of Staff. He reported directly to Ziegler, who was the former Title IX coordinator.[7]

**i.** In an August 2021 email chain with Douglas Fulton, the Director of School Administration at LCPS and the only official who seemed to actually care about what happened to the Plaintiff, Mark Smith defended LCPS' decision not to start an investigation immediately, referring to the assault as a "student allegation of an attempted sexual assault." It speaks volumes that Smith, LCPS' Title IX Coordinator, would refer to the assault as "attempted" three months after it occurred. (Report Attachment 19)

      **I.** Fulton first asked Smith whether an investigation was ongoing since the assailant had been criminally charged: "The mom has shared that her son was charged. Have we started a Title IX investigation? The incident occurred last May."

      **II.** When confronted by Fulton about LCPS' failure to

---

[7] Mark Smith "repeatedly testified" that he could not investigate until criminal charges were filed because the Plaintiff's assault was just an "allegation of an attempted sexual assault." He was later fired for his inaction. (Report Pg. 17).

immediately investigate the assault, Smith wrote that he was "still operating from an allegation of an attempted sexual assault which is not under Title IX."

III.    Fulton responded by reminding Smith that attempted sexual assault *does* come under Title IX and therefore an immediate investigation was required. He concluded his email by confirming that John Doe and/or Jane Roe was **never** given the option to file a Title IX complaint.

IV.    This internal correspondence indicates that Fulton was the only LCPS official who consistently advocated for an immediate investigation in compliance with federal regulations.

j.    The woman responsible for the Title IX investigation into the Plaintiff's assault testified that her investigation was the first Title IX investigation she had ever done. (Report Pg. 17).

k.    Ziegler's statement at the June 22, 2021, school board meeting denying knowledge of the sexual assault was a "bald-faced lie." (Report Pg. 8).

l.    The assailant harassed and made sexually inappropriate comments to a female student at BRHS on September 9, 2021, less than one month before the October 6, 2021 sexual assault. (Report Pg. 12).[8]

---

[8] The Report states that LCPS' failure to properly handle the assault of the Plaintiff allowed the assailant to assault the young woman in October of 2021: "It is our considered judgment that the October 6, 2021 sexual assault at BRHS **never should have occurred.** Had any one of a number of individuals across a variety of entities spoken up or realized a serious problem was brewing regarding earlier incidents at BRHS then the sexual assault most likely would not have occurred. **But nobody did.**" (Report Pg. 12). Emphasis added.

    **m.** Buta Biberaj's office appears to have been unaware that the assailant returned to in-person instruction at a different LCPS school until *after* the October 6, 2021 assault at BRHS. (Grand Jury Report Pg. 11).[9]

    **n.** Every school board member of LCPS testified that they first learned that the SBHS assailant and BRHS assailant was the same individual from a *Daily Wire* report, not from any LCPS official. (Report Pg. 15).

    **o.** The Title IX investigation into the assailant's assault on the Plaintiff did not occur or even begin until October 19, 2021–five months after the sexual assault of the Plaintiff. The Grand Jury noted in its report that this delay was "indefensible." (Report Pg. 15). The Report added that the "lack of cooperation" between the County Sheriff's Office and LCPS "unquestionably" contributed to this delay. (Report Pg. 18).[10]

64. On December 6, 2022, Ziegler was fired from LCPS as a result of the Grand Jury's findings.

65. On December 12, 2022, Ziegler was indicted on three misdemeanor charges for misconduct in his role as LCPS superintendent, including one count of misdemeanor false publication, one count of misdemeanor prohibited conduct, and one count of misdemeanor penalizing an employee for a court appearance.

---

[9] The Report noted that an individual from the Commonwealth Attorney's office testified: "[t]o be perfectly frank, when I was agreeing to release him and putting in a condition that he was not to return to Stone Bridge, it was my belief that the school would take some action because that just seems logical. **He's on the radar, right**?" (Report Pgs. 11-12). Emphasis added.

[10] "Several witnesses testified that the sheriff and superintendent are not on speaking terms and tension exists between the leadership of LCPS and LCSO. The citizens of Loudoun County deserve better than two high profile individuals publicly squabbling and refusing to put aside any petty differences. Ultimately, the sheriff and superintendent need to put aside any disagreements they may have had and recognize the important relationship between their offices. The safety of the students and the community require it." (Report Pg. 18).

66. LCPS Public Information Officer Wayde Byard was charged with felony perjury on the same day.

## COUNT ONE
## Discrimination in Violation of Title IX
## 20 U.S.C. § 1681 et seq.

67. Plaintiff incorporates by reference all preceding paragraphs, as if set out fully herein.

68. Plaintiff Jane Doe was sexually assaulted by another student of LCPS.

69. Plaintiff Jane Doe reported the sexual assault to LCPS administrators and employees on the same day as when the attach occurred.

70. LCPS was obligated to address these reports, since student-on-student sexual assault is a form of sex discrimination prohibited by Title IX.

71. LCPS had actual knowledge that Jane Doe was sexually assaulted based on a first-hand report by Jane Doe.

72. The individuals with actual knowledge of Doe's sexual assault had the authority and ability to investigate and address the sexual assault.

73. LCPS was further obligated to address these reports under Title IX because LCPS had substantial control over the student who sexually assaulted Jane Doe, as well as the context in which the assault occurred—a women's restroom at Stone Bridge High School.

74. LCPS's failure to respond to Jane Doe's sexual assault as required by law and failure to prevent further threats and assault was severe, pervasive, and created a hostile educational environment for Doe based on her sex.

75. In light of these circumstances, LCPS's response as a Title IX funding recipient was clearly unreasonable.

76. By its acts and omissions, LCPS was deliberately indifferent to Doe's sexual assault, physical assault, and bullying that created a hostile educational environment for her. LCPS's deliberate indifference included, without limitation:

    a.   Failing to timely address Jane Doe's report of the sexual assault;

    b.   Questioning Jane Doe before her parents were informed of the sexual assault;

    c.   Failing to tell Jane Doe that she could decline to provide a written statement;

    d.   Ignoring Jane Doe's notable distress when LCPS had notice of a sexual assault;

    e.   Failing to immediately notify Jane Roe and John Doe that Jane Doe had been sexually assaulted;

    f.   Failing to offer Jane Doe any meaningful help or support after she reported the sexual assault;

    g.   Conducting a shoddy in-house investigation and failing to notify Jane Doe or her parents about the final outcome of the investigation;

    h.   Failing to notify Jane Doe and/or her parents when its in-house investigation had been completed;

    i.   Failing to take adequate disciplinary action against Doe's assailant;

    j.   Failing to notify Doe or her parents of Doe's rights under Title IX, including the right to file a complaint against the school;

    k.   Failure to timely initiate and complete a Title IX investigation;

    l.   Failing to provide Doe with accommodations that would permit her to continue her education in a safe environment;

    m.   Failing to inform her that she was entitled to accommodations to help her

deal with her trauma and stay on track academically;

n.  Failing to prioritize Jane Doe's well-being after the sexual assault;

o.  Egregiously failing to protect Doe from further assault and bullying that was severe, pervasive, and objectively offensive. These compounded events deprived Doe of a safe school environment and her right to an education;

p.  Intimidating her and her parents from further pursuing her legal rights; and

q.  Failing to create, implement, distribute, and enforce sexual harassment policies and procedures in complaints with Title IX, despite Title IX's requirement that it do so.

77. LCPS's actions and inactions caused Doe to undergo harassment and make her liable or vulnerable to it. She has been subjected to verbal and physical abuse by her peers because she reported her assault.

78. LCPS's deliberate indifference to Doe's sexual assault deprived her of access to educational opportunities and benefits provided by LCPS.

79. As a direct and proximate result of LCPS's violation of Doe's rights under Title IX, Doe has suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages, and losses, including, but not limited to emotional distress, fear, anxiety, physical injury, and expenses for past and future medical and psychological care.

### COUNT II
### Retaliation in Violation of Title IV
### 20 U.S.C. § 1681, et seq.

80. Plaintiff incorporates by reference all preceding paragraphs, as if set out fully herein.

81. Plaintiff Jane Doe was sexually assaulted by another student of LCPS.

82. Plaintiff Jane Doe engaged in protected activity by reporting the sexual assault to LCPS administrators and employees.

83. Plaintiff Jane Doe engaged in further protected activity by reporting to LCPS administrators and employees additional instances of sex-based and/or retaliatory mistreatment, assault, and harassment, as further alleged above.

84. In retaliation for engaging in such protected activity, LCPS changed Jane Doe's academic schedule to accommodate the perpetrators of the threats and physical assault at school, which was materially adverse to her educational opportunities because it disrupted her routine without the consent of her parents, harmed her academic performance, and punished her for actions she was not responsible for.

85. There was no legitimate reason to change Jane Doe's schedule, as any purported benefits from changing her schedule could have been attained by taking appropriate action against the perpetrators and/or changing their schedules instead of targeting Jane Doe for mistreatment.

86. In addition, despite multiple complaints by Jane Doe and her family, LCPS allowed other students to create a retaliatory hostile educational environment for Jane Doe that was severe and pervasive.

87. LCPS's actions and inactions caused Doe to undergo harassment and make her liable or vulnerable to it. She has been subjected to verbal and physical abuse by her peers because she reported her assault and continued to complain about and/or otherwise oppose the sex-based and retaliatory mistreatment to which she was repeatedly subjected.

88. Mr. Calvin Adams, an administrator at Stone Bridge High School, did not believe

that Jane Doe was sexually assaulted and dismissed her claims. Jane Doe relied on the support of Mr. Adams since the beginning since he was present with her on the day of the sexual assault (May 28, 2021).

89. On November 11, 2021, Jane Doe was taunted by a male classmate at school, who in reference to the sexual assault and the physical assault taunted her with the question "Why didn't you fight back?" This taunt furthers a talking point that has been prevalent in the mainstream media (furthered by comments from the mother of the perpetrator of the sexual assault) since the attack. (Exhibit 14).

90. LCPS's deliberate indifference to Doe's sexual assault and to her complaints about sex-based and retaliatory harassment deprived her of access to educational opportunities and benefits provided by LCPS, and their acts and/or intentional omissions were in retaliation of her making a complaint of rape while at their high school, which interfered with their desire to implement a significant policy agenda that was undermined by the attack on Jane Doe..

91. As a direct and proximate result of LCPS's violation of Doe's rights under Title IX, Doe has suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages, and losses, including, but not limited to emotional distress, fear, anxiety, physical injury, and expenses for past and future medical and psychological care.

92. LCPS utterly failed to protect Jane Doe from further harm and were deliberately indifferent to the assaults and threats she faced.

93. The physical assaults, taunts, and bullying were so extreme that Jane Doe was forced to transfer schools in order to protect herself from further harm.

## REQUESTED RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Honorable Court:

1. Enter judgment in favor of Plaintiff Jane Doe, by her parents and next friends, Jane Roe and John doe, on her claim of discrimination under Title IX;

2. Enter judgment against Loudoun County School Board;

3. Declare Defendant Loudoun County School Board's conduct in violation of Title IX of the Education Amendments of 1972.

4. Award Plaintiff compensatory damages of at least $30,000,000.00 or in an excess amount established at trial, including, without limitation, payment of Plaintiff's expenses occurred as a result of the sexual assault and Loudoun County Public Schools' deliberate indifference damages for deprivation of equal access to the educational opportunities and benefits provided by Loudoun County Public Schools; and damages for past, present, and future emotional pain and suffering, ongoing mental anguish, and loss of past, present, and future enjoyment of life;

5. Award injunctive relief to be determined at trial requiring Loudoun County School Board to comply with Title IX;

6. Award Plaintiff pre-judgment and post-judgment interest;

7. Award Plaintiff her court costs and expenses, including attorneys' fees, pursuant to 42 U.S.C. § 1988(b); and

8. Grant such other relief as this Court deems just and proper.

**A JURY TRIAL IS DEMANDED**

Respectfully submitted,
Jane Doe, by her parents and next
friends,
Jane Roe and John Doe
By Counsel

_____/s/_____
William M. Stanley, Esq. (VSB #37209)
The Stanley Law Group, PLLC
13508 Booker T. Washington Highway
Moneta, Virginia 24121
Telephone: 540-721-6028
Fax: 540-721-6405
Email: bstanley@vastanleylawgroup.com

*Counsel for Plaintiff*

Louis N. Joynes, II, Esq. (VSB# 25822)
Joynes & Gaidies
502 Viking Drive, Suite 201
Virginia Beach, VA 23452
Telephone: (757) 486-3000
Facsimile: (757) 486-4732
Email: mike@joyneslaw.com
*Co-Counsel for Plaintiff*