IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| JANE DOE<br>By her parents and next friends,<br>JANE ROE AND JOHN DOE<br><br>v.<br><br>LOUDOUN COUNTY<br>SCHOOL BOARD,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  Case No.:<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF LAW IN SUPPORT OF JANE DOE'S MOTION FOR LEAVE TO PROCEED PSEUDONYMOUSLY

COMES NOW, the Plaintiff Jane Doe, by her parents and next friends Jane Roe and John Doe, and file the following memorandum in support of Plaintiff's Motion for Leave to Proceed Anonymously:

### INTRODUCTION

This is a civil rights case brought by Jane Doe, a graduate in Loudoun County Public Schools hereinafter "LCPS"), who, at age 15, was sexually assaulted by a younger male LCPS student in a female bathroom at Stone Bridge High School (hereinafter "the incident").

Despite being fully aware of the aforementioned incident, school officials failed to complete a thorough, timely investigation of the incident. LCPS also failed to offer or provide Jane Doe with the support she needed to feel safe at school, where she continued to attend class.

As a result of LCPS's failure to take meaningful and appropriate action to address her sexual assault and protect her from further threats and assault, Jane Doe struggled

1

academically, emotionally, and physically for the remainder of the school year. She continues to struggle significantly with the aftermath of the sexual assault and the school's failure to take appropriate action to help her and protect her while she still was attending Loudoun County Public Schools.

LCPS's failure to respond promptly and adequately to reports that Jane Doe was sexually assaulted by another LCPS student constitutes sex discrimination, in violation of Title IX of the Education Amendments of 1972 ("Title IX"). After the sexual assault, Jane Doe was physically assaulted, threatened, and bullied by peers in a targeted form of harassment that was so severe, pervasive, and objectively offensive that it deprived her of access to a safe educational environment. LCPS took no action in to support and/or protect her at this time. With 92,000 students, LCPS's deliberate indifference to sexual assault within the student body is now subjecting an unconscionable number of students, including Jane Doe, to a hostile educational environment. As the entity that manages and operates LCPS, Defendant Loudoun County School Board is responsible for LCPS's Title IX violations. When parents place minor children in private schools for their education, the teachers and administrators of those schools stand *in loco parentis* over the children entrusted to them. In fact, the tutor or schoolmaster is the very prototype of that status. As Blackstone describes it, a parent 'may . . . delegate part of his parental authority, during his life, to the tutor or schoolmaster of his child; who is then *in loco parentis*, and has such a portion of the power of the parent committed to his charge, viz. that of restraint and correction, as may be necessary to answer the purposes for which he is employed.'" *Vernonia Sch. Dist. 47J v. Acton* (94-590), 515 U.S. 646 (1995). 1 W. Blackstone, Commentaries on the Laws of England 441 (1769).

While a party's name is generally a matter of public record, the Fourth Circuit and this district have repeatedly recognized that anonymity is warranted under certain circumstances. This is one of those cases. *First,* the fact that Jane is a minor who was the victim of a sexual at a public school is reason enough to conceal her identity, and numerous courts have concluded a party who is a minor is a sufficiently private and sensitive matter to overcome default presumptions of disclosure. *Second,* Jane has already been subjected to bullying and threats at school due to her being a victim in a case that has gained national media coverage. Disclosure of Jane's identifying information would not only redouble these threats, but also expose her identity to the general public, which could exponentially increase the sources of that harassment. Although Fed. R. Civ. P. 5.2(a)(3) requires any reference to Jane on the Court's docket to use her initials rather than her full name, the combination of Jane's initials with the legal name of her next friends would make Jane's name readily ascertainable to members of the public. *Third,* this case has already attracted significant media attention and will likely continue to do so. Thus, it is highly likely that the inclusion of Jane's initials on public filings, combined with the name of her next friends, would cause her identity to become widely publicized, following her into adulthood and inviting future harassment and discrimination. *Finally,* allowing Jane to proceed under a pseudonym would not prejudice or the Loudoun County School Board. Jane's identity is already known to them, Jane's identity has no bearing on the issues presented, and the inconvenience to the parties of redacting Jane's identifying information from public filings would be minimal.

Jane Doe, through her next friends John Doe and Jane Roe, request only the very minimal accommodation of proceeding as a Plaintiff without public disclosure of her identifying information through her initials and the name of his next friends. Numerous courts have held anonymity is appropriate in precisely these circumstances, and this Court should grant Jane's motion.

**BACKGROUND**

On May 28, 2021, 15-year-old Jane Doe was sexually assaulted in a women's restroom at Stone Bridge High School by a skirt-wearing male. Jane Doe reported the sexual assault to the school. Jane Roe, Plaintiff's mother, received a call from a staff member at the school informing her that Jane Doe had been "beaten up" by a male in a female restroom—but failed to inform her of the sexual assault.

Stone Bridge High School Principal Tim Flynn sent out a statement to parents the same day, but bizarrely only referenced Jane's father's (John Doe) actions at the school that day after he arrived to the school property when he was notified of the incident and denied access to her. There was no mention of the assault: "There was an incident in the main office area today that required the Loudoun County Sheriff's Office to dispatch deputies to Stone Bridge. The incident was confined to the main office and the entrance area to the school. **There was no threat to the safety of the student body**… Students might have noticed Sheriff's Office personnel on campus and I wanted to let you know that something out of the ordinary happened at school today." (Emphasis added).

On June 1st, Jane Doe returned to school after law enforcement assured John Doe and Jane Roe that a safety plan was in place for Jane Doe. However, no safety plan was put in place to protect Jane Doe from further harm. Jane Doe, Jane Roe, and John Doe were all told to leave the school premises.

At a subsequent school board meeting, the Superintendent of LCPS *denied* that a sexual assault had ever taken place in a bathroom in any of their schools, as the school board was discussing enlarging their 1040 transgender policies to reflect guidance set forth by the Virginia Department of Education (VDOE) (proposed as "8040 guidelines"). These proposed guidelines included but were not limited to allowing those students who identified as a gender other than their biological gender to have access to the bathroom of their preferred gender identification. The revelation that a rape of a female student in the female bathroom at a LCPS school by a "gender fluid" male wearing a skirt during Pride Month would have

presented unwanted facts that would have harmed the school board's efforts to adopt such a policy, one that was overwhelmingly favored by the board members.

Specifically, at the school board meeting on June 22, 2021, LCSB Superintendent Scott Ziegler lied that he was unaware of the sexual assault, despite the fact that Loudoun County Sherriff's office conducted a two-month investigation into the assault: "To my knowledge, we don't have any record of assaults occurring in our restrooms." Ziegler said and added: "I think it's important to keep our perspective on this, we've heard it several times tonight from our public speakers <u>but the predator transgender student or person simply does not exist.</u>" (Exhibit 3 of Complaint). (Emphasis added).

This political motive to avoid acknowledgement of what happened to Jane Doe led to LCSB's failure to take remedial, supportive measures to provide her with a safe school environment after the sexual assault.  In fact, Superintendent Ziegler *had* in actually emailed <u>each member of the Loudoun</u> County School Board on May 28th notifying them of the sexual attack. (Exhibit 4 of Complaint).

Initially, LCSB said it was prevented from handling the sexual assault because of its need to comply with law enforcement, and that it could not discipline the assailant until the law enforcement investigation was concluded. This assertion was incorrect, and disputed by the Loudoun County Sheriff's Department.

On October 25, 2021, the assailant was found guilty of sexually assaulting Jane Doe.

Meanwhile, Jane Doe has been incessantly reminded of her assault, bullied by some of her peers both at school and on social media, and forced to create a new normal where she lives in fear of retaliation from classmates from where she reported the sexual assault:

    a.    Jane Doe received a written threat of physical violence from a classmate on August 26th. Jane Roe and Jane Doe reported this threat to the school. Jane Roe then reported this incident to the Loudoun County Sherriff's Office after LCPS failed to respond to the incident in a timely manner. This was a sex-based threat

and was made in retaliation for Jane Doe's report of her sexual assault and other opposition to sex-based mistreatment at the school.

b. Jane Doe was physically assaulted by a classmate on September 8th. This was a sex-based assault and was committed in retaliation for her report of the initial sexual assault and other opposition to sex-based mistreatment. This incident was recorded by the same student who threatened Jane Doe with physical violence on August 26th. Jane Doe reported this incident to LCPS, and despite the seriousness of the threat, the perpetrator was suspended for less than a week.

c. Jane Doe was again threatened by several classmates on October 14th. These were sex-based threats and were made in retaliation for her report of the initial sexual assault and other opposition to sex-based mistreatment. Jane Doe reported this incident to the school.

d. Instead of adequately disciplining those who bullied and threatened Jane Doe, LCPS forced Jane Doe to make changes in her own class schedule. Jane Doe's class schedule was changed, despite objections from her parents.

These unconscionable acts caused Jane Doe even more emotional and psychological trauma, and LCPS failed to protect her from and was deliberately indifferent to the sex-based and retaliatory threats and the physical assault that exacerbated the trauma of the original horrific sexual assault.

The actions of LCPS following the sexual assault were deliberately indifferent and failed to prevent further assault, and the school was certainly on notice after the August 26th incident that Jane Doe faced a substantial risk of further threats or physical assault. Such deliberate indifference made Jane Doe vulnerable to further targeted harassment at school.

Subsequently, in a statement made on October 15, 2021, Ziegler admitted that the school failed to protect Jane Doe, saying: "To the families and students involved: My heart aches for you, and I am sorry that we failed to provide the safe, welcoming and affirming

environment that we aspire to provide."

LCPS did not even begin a Title IX investigation of the rape of Jane Doe until October 21, 2021, nearly <u>five</u> months after the incident occurred. At no time after the incident did LCPS conduct a threat assessment of the assailant, nor provide any support services to Jane Doe as required by Title IX.

LCPS was obligated to address these reports, since student-on-student sexual assault is a form of sex discrimination prohibited by Title IX. LCPS had actual knowledge that Jane Doe was sexually assaulted based on a first-hand report by Jane Doe. The individuals with actual knowledge of Doe's sexual assault had the authority and ability to investigate and address the sexual assault.

LCPS was further obligated to address these reports under Title IX because LCPS had substantial control over the student who sexually assaulted Jane Doe, as well as the context in which the assault occurred—a women's restroom at Stone Bridge High School. LCPS's failure to respond to Jane Doe's sexual assault as required by law and failure to prevent further threats and assault was severe, pervasive, and created a hostile educational environment for Doe based on her sex. In light of these circumstances, LCPS's response as a Title IX funding recipient was clearly unreasonable.

LCPS's deliberate indifference to Doe's sexual assault deprived her of access to educational opportunities and benefits provided by LCPS. As a direct and proximate result of LCPS's violation of Doe's rights under Title IX, Doe.

### ARGUMENT

The presumptive rule under the Federal Rules of Civil Procedure is that the identities of the parties are included on the pleadings. *See* Fed. R. Civ. P. !0(a). But, "in exceptional circumstances, compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings, including use of a pseudonym."

*Doe v. Pub. Citizen,* 749 F.3d 246,273 (4th Cir. 2014). The Fourth Circuit has identified several nonexclusive factors that District Courts should consider in evaluating a motion to proceed pseudonymously:

> [W]hether the justification asserted by the requesting pmiy is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting patiy or even more critically, to innocent non-pmiies; the ages of the persons whose privacy interests are sought to be protected; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James v. Jacobson,* 6 F.3d 233,238 (4th Cir. 1993). In addition, pursuant to Rule 26(c), the Court has broad authority for "good cause" to "issue an order to protect a party or person from anuoyance [or] embarrassment." Fed. R. Civ. P. 26(c).

Jane is exactly the type of litigant the Fourth Circuit's standard was designed to protect by use of a pseudonym. Jane is a minor who has already been subjected to bullying and threats at school due to her being the victim of rape and the arrest and conviction of her attacker, who was a fellow student at her high school. Granting Jane leave to proceed under a pseudonym would safeguard against wider public disclosure of Jane's actual name and other intimate information and protect her and her family from further harassment as this case continues to garner significant attention in the national media. None of the existing parties would be prejudiced by allowing Jane to proceed by a pseudonym.

## I. REVEALING DOE'S IDENTIFYING INFORMATION WOULD REQUIRE HER TO DISCLOSE INFORMATION CONCERNING A MATTER OF SENSITIVE AND HIGHLY PERSONAL NATURE.

Permitting Jane and her next friends to proceed under pseudonyms is necessary to "preserve privacy in a matter of sensitive and highly personal nature." *James v. Jacobson,* 6 F.3d at 238.

Without the protection of pseudonyms for himself and his next friend, John's Plaintiff status would become publicly available information, frustrating his efforts to keep his personal information private and safeguard her privacy right in that information. Requiring Jane to identify herself to the public in order to participate in the litigation would also have the effect of undermining the very privacy interest she seeks to vindicate through her lawsuit against Loudoun County. It cannot be overstated that Jane was a victim of a heinous sexual assault, one that has caused physical, emotional and mental harm that will be with her forever. The facts of the sexual assault have been repeated in great detail in print and video media outlets, and on social media platforms as well. Moreover, it has always been public policy of both courts and media to protect victims of sexual assault from being identified in the public eye, and this case provides no exception to this common-sense societal rule.

## II. PUBLICIZING DOE'S IDENTIFYING INFORMATION WOULD RISK UNNECESSARILY EXPOSING HER TO RETALIATION.

Jane also has an important interest in ensuring that her participation as an Plaintiff in this lawsuit does not expose her, or her parents as next friends filing on her behalf, to additional harassment or threats of harm, which could be aggravated by the significant publicity this case has received to date. Jane has already faced significant harassment and bullying from other students at her high school due to the public uproar over parents rights in the education of their children that has been spurred on by what happened to her, and the

efforts of Loudoun County School Board to cover it up from public view, even before the initiation of this lawsuit. These actions against her have included being repeatedly subjected to slurs, being the target of online bullying (with other students posting images of Jane on social media with derogatory comments), and both she and her parents have received threats of physical harm.

By way of comparison, in *Doe v. Stegall,* 653 F.2d 180 (5th Cir. 1981) the court considered a request for anonymity by minors challenging school-sponsored religious ceremonies and compelled prayer in a public middle school. The court found that the fact that the plaintiffs' views were not mainstream and had been the subject to immense criticism and threats of violence counseled strongly in favor of anonymity. *See id.* at 186. The court analogized the "opprobrium" against the plaintiffs with "the infamy associated with criminal behavior," and noted that evidence "indicate[d] that the Does may expect extensive harassment and perhaps even violent reprisals if their identities are disclosed." *Id.* Although the mere "threat of hostile public reaction to a lawsuit, standing alone" would not be sufficient to justify anonymity, the court reasoned, the "threats of violence generated by this case, in conjunction with the other factors weighing in favor of maintaining the Does' anonymity, tip the balance against the customary practice of judicial openness."

These concerns are particularly amplified in this case due to the significant amount of news coverage the case has already received. Media attention has included not only local but also national and international outlets.

If Jane's identifying information were to appear in public filings and orders, widespread public dissemination of his name through the news media would likely follow. *See Doe v. The Rector & Visitors of George Mason Univ.,* 179 F. Supp. 3d 583, 593 (E.D.

<20>Va. 2016) (granting motion to proceed under pseudonym where the "threat [of violence] is all the more serious given that this case has drawn significant media attention, which means many people across the country are aware of [the] accusations against [the party].").</20> Such widespread coverage would not only force Jane to sacrifice important privacy interests and she would lose protection normally afforded to other victims of sex crimes by broadcasting them to the world.

### III. DOE'S STATUS AS A MINOR WEIGHS AGAINST DISCLOSURE.

The fact that Jane is a minor provides additional justification to allow her to proceed under a pseudonym. The Fourth Circuit has instructed district courts to consider "the ages of the persons whose privacy interests are sought to be protected." *James,* 6 F.3d at 238. And multiple courts have granted motions in other cases for Plaintiffs to be allowed to proceed under pseudonyms in part because those individuals are minors. *See Highland Local Sch. Dist.,* 2016 WL 4269080, at *5 (granting motion to proceed under pseudonym in part because "[c]hildren are especially entitled to privacy particularly when they have previously recounted retaliation or harassment"); *Doe v. United States,* No. 16-CV-0640-SMY-DGW, 2016 WL 3476313, at *1 (S.D. Ill. June 27, 2016) (granting such a motion and adding that F.R.C.P. 5.2(a) "restricts filings to protect the privacy of minors").

### IV. THE INTERESTS OF THE PARTIES AND OF THE PUBLIC WOULD BE UNAFFECTED BY THE RELIEF REQUESTED.

Finally, there is no public interest in the disclosure of Jane's identifying information, nor any prejudice to the existing parties, from allowing her and her next friends to proceed under a pseudonym.

The Fourth Circuit has instructed district courts to consider "whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." *James,* 6 F.3d at 238. Although the School Board is a governmental entity, the public interest in cases where "the

defendants are government officials sued in an official capacity" does not weigh against the relief requested. *George Mason Univ.,* 179 F. Supp. 3d at 594. Whatever public interest may exist in the subject matter of the litigation, Jane's identifying information and identity are not in the public interest. As this district held in *George Mason University:*

> [T]he use of a pseudonym is an appropriately tailored means of protecting [the parties'] interests without unduly restricting public access to the litigation materials. Indeed, to the extent the public has a heightened interest in litigation against the government, "the public's strong interest in monitoring the position that government agencies take in litigation" is vindicated here because the public has full access to everything the government has filed with the exception of (the anonymous parties'] identities.

The fact that the existing parties to the litigation are already familiar with Jane and her family also weigh in favor of granting the motion. *See, e.g., Doe v. United Servs. Life Ins. Co.,* 123 F.R.D. 437, 439 (S.D.N.Y. 1988) (holding that the fact that government was a party to a case should not weigh against permitting anonymity because the government "already [knew] Doe's true identity, it [would] have full discovery rights as the case progressed], and it [would] only be barred from using or disclosing the fruits of its discovery for purposes other than the defense of this action."). The School Board knows who Jane is. In the event this case proceeds to discovery, the parties already have the ability to contact her to issue whatever discovery requests are ultimately appropriate for the scope of the action, as well as to use their knowledge of her name to locate pertinent discovery materials exchanged with one another or obtained from third parties. The only impact on the existing parties from granting the motion would be the minimal effort that is required to ensure that they do not post Jane's (or her parents') identifying information on the public docket.

## CONCLUSION

Plaintiff Jane Doe and her next friends John Doe and Jane Roe respectfully request that the Court enter an order permitting her and her next friends to proceed under a pseudonym and directing the parties to refrain from posting their identifying information on the Court's docket.

Respectfully submitted,
Jane Doe, by her parents and next friends,
Jane Roe and John Doe
By Counsel

_____/s/_____
William M. Stanley, Esq. (VSB #37209)
The Stanley Law Group, PLLC
13508 Booker T. Washington Highway
Moneta, Virginia 24121
Telephone: 540-721-6028
Fax: 540-721-6405
Email: bstanley@vastanleylawgroup.com

*Counsel for Plaintiff*


Louis N. Joynes, II, Esq. (VSB# 25822)
Joynes & Gaidies
502 Viking Drive, Suite 201
Virginia Beach, VA 23452
Telephone: (757) 486-3000
Facsimile: (757) 486-4732
Email: mike@joyneslaw.com
*Co-Counsel for Plaintiff*